Mr. Justice Ha&ner
delivered the opinion of the court: •
This is an action at law, brought by the plaintiffs to recover a sum of money claimed to be due by the defendant, a *352 married woman owning separate estate in Her own right in the District of Columbia, for groceries sold and delivered to Her under the following circumstance, as set forth in the bill of exception :
“At the trial of this cause the plaintiffs, to maintain the issue on their part joined, offered and gave evidence tending to show that in September, 1878, the defendant, a married woman, owning separate estate in her own right in the District, who prior to that time had dealt with the plaintiffs exclusively for cash, requested that credit on a running account, to the amount of about $20 a month, be extended to her. She stated to the plaintiffs at that time that she was the owner of several houses in her own right, and that she would pay every month out of her separate estate ; that she made the bills and would pay them ; that the account was for groceries :and necessaries for the family. The account was opened, and, running largely in excess of $20 a month, had, in December following, amounted to $250 and upwards. Thereafter the defendant, at different times, paid $100 on the account. In April, 1879, there still being due $155.37, the plaintiffs called upon the defendant, and demanded a settlement. She then said that she was about to sell one of her houses, situated on F street, and would pay the plaintiffs out of the proceeds of this .sale. The house is not -yet .sold. The defendant-was living with .her husband and his family -at Clark Mills’ place in the ¡county. The goods were delivered there. The husband was notoriously insolvent and ¡.out of employment. The plaintiffs there rested.
The defendant thereupon .asked :the,court 'to instruct the jury as follows :
“ 1st. That on the whole evidence the plaintiffs were not entitled to recover, and
“ 2d. That a married woman living with her husband cannot render herself personally liable on a verbal contract for the purchase of necessaries for the family, without charging her separate estate for the payment of the debt, or promising to pay out of her separate estate.”
*353 These instructions the court refused to give, but, as the ■exception states, charged the jury substantially, that if they believed from the evidence, that defendant’s husband was insolvent and without means to provide for his family, and that the plaintiffs, relying upon the faith and credit of defendant’s separate estate, extended the credit and delivered the merchandise to her upon her promise to pay for the ■same out of her separate estate; that plaintiffs were entitled to recover against the defendant.
To the court’s refusal to charge as prayed, the defendant excepted, and the verdict being for the plaintiff', the case is brought here on appeal.
It involves the construction of the statutes in force within this District governing the rights and liabilities of married women possessed of separate estates. The statutes have repeatedly been before us for examination in different forms> but this is the first instance in which the question has been presented whether a married woman whose husband is insolvent and without means to provide for the family, can be sued at law for supplies furnished to her for the support of the family by merchants who relied upon the faith and credit of her separate property, and. delivered the merchandise to her upon her verbal promise to pay for the same out of such separate estate.
¥e must apply in the examination of these statutes the universal rules of interpretation and, first, consider, what was the state of the law before their enactment and, next, the mischief to be remedied.
Nothing can be plainer than the proposition that at common law all contracts and agreements of a married woman were held absolutely void at law ; that all proceedings at law to enforce them were fruitless and illegal, and that she could be compelled to perform them in equity alone. As stated succinctly by Chancellor Kent in 2 Com., 160, •at law a woman cannot be sued as a feme sole while the relation of marriage exists and she and her husband are living under the same government.”
The exceptional cases, where the wife might be sued at *354 law, are all comprehended within this statement ; as, where the husband was banished, or had abjured the realm, or was an alien living abroad; but there is no trace anywhere to be; found in the cases, of the idea that at common law the insolvency of a husband, living with his wife,'afforded any warrant for the claim to sue the wife at law for any agreement on her part of any description. It is well settled that the courts have declined to invade these common law rules beyond the requirements of the amendatory statutes, but have uniformly held that the common law disabilities continue except so far as they have been removed by statute. Bradstreet vs. Baer, 41 Md., 23.
It is equally well known that at the common law, in the absence of a previous settlement, all the personal property of the wife devolved absolutely upon the husband, and that^ during the coverture, he was entitled to the entire control and management of her realty, and the sole enjoyment of its rents and profits, without obligation on his part to repair it, and without power on her part to dispose of it by will or convey away a particle of it ; or to enter into any contract or agreement for its preservation or improvement without his assent.
It was to change these features of the common law, so liable to be enforced to the injury of the wife’s interests r that Congress passed the statute of April 10, 1869, contained in sections 727 to 730, inclusive, of the Revised-Statutes of the District of Columbia.
Section 727 declares : “In the District, the right of any-married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband nor be liable for his debts.”
It is apparent that this section was only designed to change the previous rule of law as to the ownership of the wife’s property, and thus cure one of the then existing mis-chiefs.
*355 But it is silent as to the question of her existing disability td contract. By virtue of this section, her real and personal property designed to be embraced within it, belongs absolutely to her, just as similar property may belong to the wife’s infant brother; but, so far as this section is concerned, she remained more incapacitated to make a contract to bind her at law than her infant brother, since he might bind himself for necessaries by a contract which might be enforced at law.
By section 728, it is provided : “ Any married woman may convey, devise or bequeath her property or any interest therein in the same manner and with like effect as if she were unmarried.”
The purpose of this section undoubtedly was solely what it expresses in words. No power to enter into any contract, enforceable at law, can be gathered from its language.
The question of the wife’s right to contract is treated of in the two succeeding sections.
Section 729. “ Any married woman may contract and sue and be sued in her own name in all matters having relation to her sole and separate property, in the same manner as if she were unmarried.”
That the words “having relation to her sole and separate property,” were designed to limit the range of her contracts is obvious. Unless such a purpose existed on the part of Congress, the words would have been omitted, and she would have been clothed with unlimited power to contract upon all subjects as a sole trader, and to make any purchases necessary to carry on such business. The statutes of some of the States confer such power upon a feme covert, but in the language of this court in Ritch vs. Hyatt, 3 Mac A., 541, “our statute ha3 conferred neither of these powers on the married woman.”
What then is the meaning of this phrase? It is plain that “the matters” referred to must be such as actually have “relation to her sole and separate property,” and not such as she herself may choose to say have such relation, irrespective of the fact. Unless this be so, her separate estate may be liable at law for whatever useless or frivolous expenditure a silly woman *356 may see fit to embark in for her personal adornment, provided she may declare it relates to her estate. Such a construction would do violence to the words and to the purpose of the law giver. The words “ matters having relation to,” clear!}7 mean matters appertaining to or having connection with or about her estate, in fact, and not such as may be claimed to relate to it, simply berause she may have seen fit to say, in opposition to the facts, that they do relate to it. In no just sense of the language can it be said that agreements for the hire of a stall at an opera, or to pay the expenses of costly balls or for extravagant gems, are contracts relating to the wife’s separate estate.
The contracts referred to in the statute were such as, in justice, should have been made binding upon her and her property, after all of it, both personal and real, had been removed from the disposal of the husband, and vested as absolutely in her as if she were unmarried. The repair and improvement of the separate estate of an unmarried sister should not be charged against a married man, but should be paid by the owner who has a right to its revenues ; and the wife, under section 727, of our Revised Statutes, is as much an unmarried woman as to her separate property as the spinster in the case we have supposed.
The language of section 729 creates powers and liabilities with respect to the same subject-matter, and' deals with that subject-matter throughout. The section gives the married woman power to contract “ in all matters having relation to her sole and separate estate,” to sue in all such matters, and renders her liable to be sued in respect of the same matters. If she can contract or be sued respecting any particular “ matter,” she can equally sue with respect to the same matter; and of course upon the same ground — that it has “ relation to her sole and separate estate.”
If a married woman can contract and be sued at law for a grocer’s bill, she could equally sue the tradesman at law, if the goods furnished were inferior in quality, or less in quantity than agreed on or because he refused to supply them after contracting so to do. In such case the goods would either *357 have been consumed or never furnished to her. Could she be said then to sue in a matter having relation to her sole and separate estate? To what part of her separate estate would such suit relate? But if she could not sue in such case because the matter of the suit is not one relating to her separate estate, neither can she contract or be sued with respect to such matter for the same reason.
Again, the last provision oh the subject, section 730, declares—
“ Neither the husband nor his property shall be bound by any' such contract made by a married woman, nor liable in any recovery against her in any such suit; but judgment may be enforced by execution against her sole and separate estate in the same manner as if she were unmarried.”
This is a plain legislative declaration that the husband and his estate shall not be answerable for any contract the wife is authorized to make by the previous section. If she makes such a contract, he and his property are forever absolved from its payment.
The provision is reasonable enough, if the power of the wife to contract is confined, as was intended, to matters really and actually about aud connected with and appertaining to — that is, “having relation to” — her own estate. Upon no reason in justice should the husband be answerable in such a case, for there was no original liability upon his part to pay for the improvement of another’s property, and he has made no contract to do so. But if the construction insisted on by the plaintiffs’ counsel be correct, this provision of the section is indefensible in reason, morals, or public policy.
The husband is bound to support his family, and especially to supply them with food, shelter and clothing according to his condition iu life ; and no act or agreement by the wife while they are living together, can absolve him from this duty.
The grocer’s bill, which may consist in great part of supplies ministering to his vices and idleness, is payable by him.
Primarily and honestly, it always should be chargeable to the husband, until it is discharged.
*358 But if the'wife, as in the present case, can take this charge upon herself by such an agreement as is here shown, the tradesman can never sue the husband, nor recover a cent from him on account of the claim. The statute does not require that the married woman shall retain her “sole and separate estate ” until the time of the suit; it is enough that she was possessed of such at the time of the contract.
It need not consist of real estate, but may equally be personalty, which she may have sold the day after the contract.
Or, if real estate, it may have been bound by prior obligations, which may render the tradesman’s right of recovery entirely useless to him. And notwithstanding the husbands by a turn of the wheel of fortune, may have become wealthy in the meantime, he is to go scot free from liability and the plaintiff is left to watch his chance to obtain payment from the married woman — perhaps from what she may acquire as the widow of the real debtor.
Could Congress have intended to enact a law having such consequences ? There could be nothing devised more likely to promote idleness and vice than a statute thus offering a premium to worthless husbands to refrain from all effort to gain a support for their families, and to appropriate what they may casually pick up, to their own private indulgences.
We think the question has been placed upon its proper foundation in the case of Bitch vs. Hyatt before referred to. It appeared in that case that a married woman was seized of an undivided interest in a parcel of land ; and that she, with two others of her co-tenants, “ with the purpose of benefiting her sole and separate estate,” (as was averred in the nar,) agreed to purchase the undivided share of the remaining co-tenant, and joined in the execution of a bond for the purchase money of this fourth part; and an action was brought in this court against the married woman, at law, on the bond.
It was insisted that this contract was made in a matter relating to her sole and separate estate ; but this position was not sustained by the court, which held that the contract *359 was about a matter relating to something- else — namely, to an estate which was not her property. at the time, but belonged to some one else ; that it therefore related to her co-tenant’s estate, and that she could not contract at law with relation to such property, though with a view to its acquisition.
In other words, that a married woman cannot undertake to purchase an article and call it when bought, her separate estate, so that her agreement to buy the thing thus purchased may be considered a contract in relation to the property she thus proposes for the first time to acquire. A fortiori would this be so where the thing acquired consisted of supplies, consumed in their use, and never, except by the wildest latitude of construction, admitting of the designation of “ her sole and separate estate.”
We have been refered to the case of Harmon vs.. Garland, recently decided by this court, as sustaining the plaintiff’s right to recover .in this action.
In that case the married woman purchased furniture under circumstances stated as follows in the special verdict: “We further find that said furniture was bought and used by the defendant for furnishing a house forming part of her separate estate, which house so furnished defendant thereafter rented.” Justice Wylie, delivering the opinion of the court, said, “ we think it is a fair inference from the verdict in this case, that the defendant in order to rent the house to advantage had to furnish it.”
Under these facts the court held that the contract was about a matter relating to her separate estate; like the purchase of stock or employment of labor for the working of her fai’m. But the theory of the decision, though it went further than this court has gone in any other case, was entirely consistent with the view of the law as expressed in the present case, and furnishes no support to the plaintiff’s claim to recover.
Nothing we have said is designed to controvert the principle which recognizes the right of a creditor to enforce in equity any contract or agreement made by a married woman *360 with reference to her separate estate. The jurisdiction of chancery to decree relief in such cases has never been doubted,, certainly not for centuries past; and the existence of this authority is an ample protection against the extreme and improbable cases suggested, that because of this view of the law, the possessor of valuable property may sufier for the necessaries of life. We are simply deciding the question submitted to us in this case ; and believing that no right of action exists at law against the defendant, the ruling of the court below in the third exception set forth, is reversed.